IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**FERNANDO RIOS and
AURELIA MORAN, and
FERNANDO RIOS and
AURELIA MORAN,
Representatives and
Guardians for FERNANDO
MORAN, JR. and IVAN
MORAN, Minor Children.**

  Plaintiffs,

  v.                 No. 08-CV-0371 BB/WBL

**OFFICER ANGEL COLORADO,
Individually and in his Official
Capacity, OFFICER STEVEN
CALZADA, Individually and in
his Official Capacity, OFFICER PETE
RODRIGUEZ, Individually and in his
Official Capacity, and THE CITY
OF SUNLAND PARK.**

  Defendants.

## **MEMORANDUM OPINION**

  THIS MATTER comes before the Court on motions for summary judgment from: (1) Defendant City of Sunland Park ("Sunland Park" or "the City"), in its capacity as a municipality (Doc. # 37); and (2) Defendants Officers Angel Colorado, Pete Rodriguez, and Steven Calzada ("the officers"), in their individual capacities. (Doc. # 28). The Plaintiffs are Aurelia Moran and Fernando Rios, husband and wife ("the plaintiffs"), who are suing both the City for its failure to train the officers, and the individual officers for violations of their constitutional rights and several violations of New Mexico law. The officers' motion for summary judgment seeks

dismissal of the plaintiffs' claims based on the qualified immunity of police officers acting in their personal capacities. Having reviewed the submissions of the parties and the relevant law, the Court finds that the defendants' motions for summary judgment should be GRANTED in part and DENIED in part.

## **Factual Background**

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to the plaintiffs, as the non-moving party. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996). The events giving rise to this case began April 30, 2007.

a. <u>Plaintiff Fernando Rios</u>

That day, Fernando Rios drove his automobile near his residence. Dep. Rios 26:15-27:14. Defendant-Officers Angel Colorado and Pete Rodriguez were patrolling in the vicinity when Officer Colorado observed Mr. Rios driving without his safety belt, a misdemeanor under New Mexico law. Memo. for S.J. (Doc. # 29 at 2).

The patrolling officers pursued Mr. Rios for the alleged infraction until both parties arrived at the residence of Mr. Rios and Aurelia Moran, his wife. *Id.* Mr. Rios exited from his vehicle and began talking to his son in the driveway when the officers approached him on foot. Rios Dep. 27:8-14. According to Mr. Rios, Officer Colorado then asked for his driver's license and proof of insurance. *Id.* at 27:24-28:2. Mr. Rios responded by saying that such documentation was not in his possession at that time. *Id.* at 47:5-9. Mr. Rios recalls that then Officer Colorado stated that Mr. Rios was driving without a safety belt and that Officer Colorado may issue a citation for failure to use a safety belt, failure to carry his driver's license and registration, or both. *Id.* at 27:20-25.

2

Mr. Rios, who was in a hurry to get to work, replied that if the officers wanted to cite him for traffic violations, they should do so and let him be on his way, as he had no time to converse. *Id.* at 27:22-24.  Before Officer Colorado responded, the telephone rang inside Mr. Rios's residence and he dashed inside to answer. *Id.* at 28:10-17.  Officer Colorado then followed Mr. Rios inside his residence and attempted to wrest the telephone out of his hand. *Id.*

Officer Colorado then informed Mr. Rios that he was under arrest and began pulling him towards the residence's front door. *Id.* at 52:2-17.  Mr. Rios wrapped his arms around an interior pillar in an attempt to remain inside. *Id.* at 52:12.  Then Officer Rodriguez came to aid Officer Colorado by pulling Mr. Rios's arms off the pillar, handcuffing him, and pushing him outside, allegedly injuring him. *Id.* at 52:13-17.  Officer Colorado at this point also pulled out a Taser gun and pointed it at Mr. Rios's chest, without pulling the trigger. *Id.* at 20-24.  The two officers removed Mr. Rios from his home, forced him into their patrol vehicle, and drove him to the police station. *Id.* at 56:23.

Once at the police station, Mr. Rios reported feeling unwell and an ambulance then transported him to a nearby emergency room, where he spent an unspecified amount of time. *Id.* at 73:4-5.  After being released from the hospital, Mr. Rios went to jail, where he spent "a couple of days" before his sister paid a bond to have him released. *Id.* at 73:21-74:4.

The night after he was released, Mr. Rios claims that he was accosted by three police officers, including Defendant Rodriguez, while he shopped with his sons at a grocery store. *Id.* at 75:4-12.  According to Mr. Rios, the officers surrounded him and "forced" him to sign certain documents. *Id.*  He believes these documents were the citations—failure to wear a safety belt, and failure to carry his licence and registration—for which Defendant Colorado originally

threatened to charge him. *Id.* at 75:23-76:1. Mr. Rios signed the documents because, in his words, he "didn't want [his] kids to see any more violence." *Id.* at 76:14-16.

About four and one-half months later, a jury in the Magistrate Court of Dona Ana County convicted Mr. Rios of resisting, evading, and obstructing an officer. (Doc. # 29 at Exh. C). As punishment, he was fined over $800, and he was placed on 364 days supervised probation. *Id.* At the time of this opinion, Mr. Rios's conviction is on appeal in a New Mexico district court. Dep. Rios 42:21-43:3.

b.   Plaintiff Aurelia Moran

Intertwined with the foregoing, is the story of Mr. Rios's wife, Aurelia Moran. When the officers followed Mr. Rios into his residence, they encountered Ms. Moran inside. Ms. Moran, like Mr. Rios, was also charged with obstructing police officers on April 30, 2007. Memo. for S.J. (Doc. # 29) at 4. According to her, Ms. Moran was charged because she tried to block Officers Colorado and Rodriguez as they arrested her husband. *Id.* at 5 (citing Moran Dep. 19:1-12). She claims that the officers moved her out of their way as they arrested Mr. Rios. *Id.* Ms. Moran acknowledges that the officers warned her that she too could be arrested. *Id.*

Once Mr. Rios was restrained in the police car, one of the officers asked Ms. Moran to accompany him to the police station to "clarify what happened." Moran Dep. 29:7-8. She complied, leaving her children with an unfamiliar neighbor who had witnessed the altercation. *Id.* at 29:22-30:16. When they arrived at the police station, the officers placed Ms. Moran under arrest and handcuffed one of her wrists to a railing. *Id.* at 33:7  Officer Colorado then informed Ms. Moran that she was being charged with "obstructing arrest." *Id.* at 36:8-9. She thereafter

served several days in jail. Memo for S.J. (Doc. #29 at 4). However, several months later, a magistrate jury acquitted Ms. Moran of the offense of obstructing a police officer. *Id.*

Based on these events, Mr. Rios and Ms. Moran sue Sunland Park, and the individual officers pursuant to 42 U.S.C. § 1983 ("Section 1983"), which gives individuals a federal cause of action against state actors who allegedly violate their federal constitutional or statutory rights under color of state law. Moreover, the plaintiffs make several claims arising under New Mexico tort law, including assault, battery, false arrest and imprisonment, and intentional infliction of emotional distress. The defendants filed motions for summary judgment with accompanying memoranda addressing just the Section 1983 claims, raising qualified immunity as a defense. The Court therefore addresses the Section 1983 claims first.

### Standard for Analyzing Motions for Summary Judgment Based on Qualified Immunity

Federal Rule of Civil Procedure 56(c) governs motions for summary judgment. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). Also, the trial court must review the evidence presented in the light most favorable to the plaintiffs. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When a defendant raises qualified immunity as a defense on summary judgment, the plaintiffs must meet a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] First, the plaintiffs must show that their evidence, accepted as true, amounts to a violation of a

---

[1]The Supreme Court recently held that this two-step analysis need not be followed in precise sequence. *See Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009). *Pearson*, however, does not affect this Court's analysis here.

constitutional or statutory right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Second, the plaintiffs must show that at the time of the occurrence the constitutional or statutory right was clearly established, such that a reasonable officer under the circumstances would understand that his acts violate that right. *See Malley v. Briggs,* 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."); *see also Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992) (for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.").

Once the plaintiffs meet this two-part test, the defendants then bear the traditional summary judgment burden of showing that they are entitled to judgment as a matter of law because no genuine disputes of material fact exist. *Nelson v. McMullen,* 207 F.3d 1202, 1206 (10th Cir. 2000).

## Discussion

### I. Municipal Liability of Sunland Park

The plaintiffs claim that the City of Sunland Park, based on its official policy or custom, knowingly, recklessly, or with gross negligence, failed to instruct, supervise, control, and discipline Officers Colorado, Rodriguez, and Calzada. As the plaintiffs have not met their burden on this claim, it is unavailing and thus dismissed.

To prevail on a claim such as this against a municipality, the plaintiffs must prove five elements. *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (relying on *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). First, they must prove that the training Sunland Park

provided was in fact inadequate. *Carr*, 337 F.3d at 1228. Second, they must prove that the officers exceeded constitutional limitations on the use of force. *Id.* Third, they must prove that the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal. *Id.* Fourth, they must prove that the inadequate training demonstrates a deliberate indifference by the city toward persons with whom the officers come into contact. *Id.* Finally, they must show a direct causal link between the constitutional deprivation and the inadequate training. *Id.*

Given such a high threshold, it is unsurprising that the plaintiffs here have not satisfied each element. Indeed, as to the first, none of the evidence provided by either party suggests that Sunland Park trained the officers inadequately. Further, on the fourth element, the plaintiffs did not provide the Court with any evidence of the City's deliberate indifference to persons such as Mr. Rios and Ms. Moran. It goes without saying, then, that proof of a causal link between the constitutional deprivation alleged and allegedly inadequate training remains lacking. Thus, the City's motion for summary judgment will be GRANTED as to the Section 1983 claims.

## II.     Individual Liability of Officers Calzada, Colorado, Rodriguez

The defendants first argue that, after they filed their motion for summary judgment based on qualified immunity on behalf of the individual officers, the plaintiffs failed to make a timely response under the Rules of Civil Procedure for the District Court for the District of New Mexico. *See* Rule LR-CV 7.6(a) (providing Plaintiffs 14 calendar days to respond after service of a motion for summary judgment). Given that a response was due by September 29, 2008, and the plaintiffs did not file one until October 28, 2008, the defendants are correct that the plaintiffs' response was untimely.

The defendants are incorrect, however, as to the significance of this late filing. Indeed, summary judgment is not proper merely because the plaintiffs filed a late response. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2001) (finding that a district court must enforce its local rules in a manner consistent with Federal Rule of Civil Procedure 56(c), which gives the moving party the initial burden to show that no genuine dispute over material facts exists); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (If the evidence produced in support of the summary-judgment motion does not meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."). Thus, although the plaintiffs should have filed their response in a timely fashion, such tardiness does not preclude denial of summary judgment. The Court will therefore resolve the Section 1983 claims against the officers on their merits.

    a.    <u>Officer Calzada</u>

As the defendants note, the rationale for Officer Calzada's inclusion in the plaintiffs' claims is not apparent. Officer Calzada has, from the outset, been included as a defendant in the case caption. *See* Compl. (Doc. # 1, attachment 1) at 1. However, in the Complaint's statement of facts, references to Officer Calzada are nowhere to be found. Moreover, the evidence submitted with the summary-judgment pleadings lacks any mention of Officer Calzada. It is thus unknown to the Court what, if any, role he played in the alleged constitutional violations. In the absence of specific allegations from the plaintiffs, the Court cannot infer wrongdoing by Officer Calzada and his motion for summary judgment will be GRANTED.[2]

---

[2] Since claims against Officer Calzada are hereby dismissed, the remainder of this opinion's use of the phrase "the officers" refers only to Officers Colorado and Rodriguez.

b.      Officers Colorado and Rodriguez

In contrast, Officers Colorado and Rodriguez played an obvious role in the events that gave rise to this case. It is incumbent upon the Court, therefore, to analyze the constitutional violations each plaintiff alleges, and determine whether each claim survives the officers' summary-judgment motion.

1.      Mr. Rios's Claim Against the Officers for Unlawful Entry Must be Dismissed as it Would Vitiate an Element of his Conviction for Resisting, Evading, and Obstructing an Officer.

One who has been convicted of obstructing an officer from making a lawful arrest cannot then bring a Section 1983 action for constitutional violations that could have been raised as defenses to the criminal charge. *See Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994) (a state convict's Section 1983 suit may be barred if he must negate "an element of the offense of which he has been convicted" to prevail); *see also Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999). As this Court is bound by principles of collateral estoppel to dismiss those of Mr. Rios's Section 1983 claims that would vitiate an element of the crime for which he has already been convicted, it is essential to first analyze the elements of his crime. *Martinez*, 184 F.3d at 1125-26.

Mr. Rios's magistrate court conviction was based on N.M. Stat. Ann. § 30-22-1 ("§ 30-22-1"). It states in relevant part:

> Resisting, evading or obstructing an officer consists of:
> B. Intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;
> D. Resisting or abusing any . . . peace officer in the lawful discharge of his duties.

9

A Section 1983 claim against Officers Colorado and Rodriguez for entering the plaintiffs' residence in violation of the Fourth Amendment stands in direct conflict with the magistrate jury's finding that Mr. Rios was resisting Officers Colorado and Rodriguez in the lawful discharge of their duties. Indeed, Mr. Rios could have raised the officers' alleged unlawful entry as a defense to his charge under § 30-22-1, and if successful, that defense would have negated an element of the crime charged, and therefore presumably would have resulted in an acquittal. *See State v. Frazier*, 88 N.M. 103, 105 (1975) (finding that a police officer was not in the lawful discharge of his duties when he "intru[ded] upon the constitutionally protected interest of a private citizen.") *see also Espiet v. State*, 797 So.2d 598, 602 (Fla.App. 5 Dist. 2001) (construing a statute similar to § 30-22-1 and finding that the "lawful discharge of duties" language encompasses whether the entry into the home was lawful). Accordingly, when the magistrate jury found that the officers were in the lawful discharge of their duties when they seized Mr. Rios inside his home, the jury found, as a matter of law, that the officers' entry was lawful. Thus, to avoid negating an element of the conviction and undermining the integrity of the jury's verdict, *Heck* compels the Court to dismiss Mr. Rios's Section 1983 claim based on the officers' entry into his residence.[3] As a result, the officers' motion for summary judgment on Mr. Rios's claim for unlawful entry will be GRANTED.

---

[3]The issue of whether the "lawful discharge of his duties" language in § 30-22-1 includes the lawfulness of the officers' entry into the home was not briefed by the parties; and no New Mexico precedent exists to directly govern this case.

      2.      <u>Mr. Rios's Claim Against the Officers for Unlawful Seizure Must be Dismissed as it Would Vitiate an Element of his Conviction for Resisting, Evading, and Obstructing an Officer.</u>

In that vein, the Court must also dismiss Mr. Rios's Section 1983 claim based on the officers' allegedly unlawful seizure. Again, to say a reasonable jury could find that Mr. Rios's seizure was unlawful would stand in direct conflict with an earlier jury's pronouncement that Mr. Rios was resisting the lawful discharge of the officers' duties. *Heck* mandates against such a finding by this Court, and the defendants' motion for summary judgment on Mr. Rios's section 1983 claim for unlawful seizure will thus be GRANTED.

      3.      <u>Mr. Rios's Claim Against the Officers for Excessive Force Survives Summary Judgment as it Does Not Negate an Element of his Criminal Conviction and the Evidence, Construed in the Light Most Favorable to Mr. Rios, Establishes That a Reasonable Jury Could Find That the Officers Used Excessive Force in Seizing Him.</u>

Mr. Rios's excessive force claim, however, may survive the officers' motion for summary judgment because whether the officers used excessive force in seizing Mr. Rios is a question independent from whether he resisted, evaded, or obstructed the officers in the lawful discharge of their duties. *See Nelson v. Jashurek*, 109 F.3d 142, 145 (3d Cir. 1997); *see also Martinez*, 184 F.3d at 1125 (finding that, while *Heck* bars a plaintiff's claim for false arrest after a state court conviction for resisting arrest, the same may not be said in a civil suit for an unreasonable seizure *based on the use of excessive force* because, there, a plaintiff would not need to negate an element of the arrest's lawfulness to prevail).

The next issue, then, is whether a reasonable jury, viewing the evidence in the light most favorable to Mr. Rios, could find that the officers used excessive force in effecting their seizure. Claims against police officers for use of excessive force during an arrest arise under the Fourth

Amendment and must be analyzed under a standard of "objective reasonableness"—measured "from the perspective of a reasonable officer on the scene," recognizing that officers may be "forced to make split-second judgments" in uncertain circumstances. *Graham v. Connor*, 490 U.S. 386, 388-89 (1989); *see also Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005).

The reasonableness analysis requires a careful balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests [and] the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. While the touchstone of the analysis is the totality of the circumstances, helpful factors include: (1) the severity of the crime at issue; (2) whether the suspect posed a threat to the safety of the officers; and (3) whether he was resisting arrest. *Id.*

Though it is a close call, a reasonable jury could find that the force the officers used in seizing Mr. Rios was excessive and his Fourth Amendment rights were thus infringed. The Court must employ the *Graham* factors to resolve this issue. First, it is hard to imagine crimes less grave than a driver's failure to wear a safety belt and carry his driver's license and registration while driving within yards of his own home, especially when he was standing in his yard when "apprehended." Second, the record is devoid of evidence indicating that Officers Colorado and Rodriguez had reason to believe that Mr. Rios posed a threat to their safety. Third, while Mr. Rios was resisting arrest, thrusting a Taser gun into his chest, hustling him out of his home, and shoving him into a car, thereby causing injury sufficient to require a trip to the emergency room, could be viewed as excessive under the circumstances by a reasonable jury. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008) (affirming a district court's denial of summary judgment based on qualified immunity to officers who placed

handcuffs on a suspect too tightly and thus caused the suspect an "actual injury"); *see also Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc) (Plaintiff must show "some actual injury" to overcome qualified immunity defense by officers accused of using excessive force); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (finding that a plaintiff must show actual injury to survive summary judgment on excessive force claims , and that plaintiffs with injuries severe enough to require a hospital visit satisfy this standard).[4]

Moreover, the foregoing citations of *Cortez*, which was decided in February 2007, and *Dawkins*, which was decided in 1995, demonstrate that an individual's constitutional right to be free from excessive force which causes actual injury was clearly established by the Tenth Circuit and the weight of authority from other circuits by April 2007, when these events occurred. Thus, as a reasonable jury could determine that the force the officers used on Mr. Rios amounted to a constitutional violation that was clearly established, the officers' motion for summary judgment on the excessive force claim will be DENIED.

      4.    <u>Ms. Moran's Claim That the Officers are Liable for an Unlawful Entry Into Her Home is Sufficient to Withstand Their Summary-Judgment Motion.</u>

Unlike Mr. Rios, Ms. Moran was acquitted of her charge based on § 30-22-1. Her Section 1983 claim that the officers entered her home unlawfully is thus unaffected by any prior judgment. The Court finds that Ms. Moran's Section 1983 claim against the officers for unlawful entry should survive their motion for summary judgment.

---

[4]Mr. Rios was feeling ill the day of these events, and his preexisting health problems, rather than the officers' treatment, may have caused his hospital visit. However, the defendants have not provided an innocent explanation for Mr. Rios's trip to the emergency room, and absent some justification by the defendants, the Court must assume at this stage that it was caused at least in part by the officers' use of force.

"The sanctity of a person's home-his castle-requires that the police may not invade it without a warrant except under the most exigent of circumstances." *Maryland v. Buie*, 110 U.S. 325, 329 (1990). Indeed, an officer's entry into the home is the "chief evil against which the wording of the Fourth Amendment is directed." *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *U.S. v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972)). Entries into a home without a warrant are hence presumptively unreasonable. *Welsh*, 466 U.S. at 749. And when the government's interest in entering a home is only to arrest for a minor offense, "that presumption of unreasonableness is difficult to rebut." *Id.* at 750.

Mr. Rios's deposition testimony, if true, leads the Court to the conclusion that the officers entered the plaintiffs' home unlawfully. The officers had no warrant, rendering their entry a presumptive violation of the Fourth Amendment. Furthermore, chasing Mr. Rios into the home to arrest him for suspected traffic offenses—failure to use a safety belt and failure to carry his driver's license and registration—fails to overcome this presumption. Justice Jackson articulated the wrongfulness of the officers' alleged actions here when he wrote, "it is to me a shocking proposition that private homes . . . may be indiscriminately invaded at the discretion of any suspicious police officer engaged in following up offenses that involve no violence or threats of it." *McDonald v. U.S.*, 335 U.S. 451, 459 (1948). The Court agrees and finds that—assuming the plaintiffs' evidence is true—the officers violated Ms. Moran's Fourth Amendment rights when they entered her home.

Also, that entering a home without a warrant is unreasonable in the absence of an exigency was a clearly-established constitutional rule by April 30, 2007. *See, e.g., Kyllo v. U.S.*, 533 U.S. 27, 31 (2001) ("With few exceptions, the question whether a warrantless search of a

14

home is reasonable and hence constitutional must be answered no."); *Payton v. New York*, 445 U.S. 573, 586 (1971); *U.S. v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002) (A warrantless intrusion into a home may only be justified by an exigency such as safety of the officers). Accordingly, the officers here are not entitled to qualified immunity on Ms. Moran's Section 1983 claim of unlawful entry, and their motion for summary judgment is DENIED.

     5. <u>Ms. Moran's Claim That the Officers are Liable for an Unlawful Seizure of her Person is Sufficient to Withstand Their Summary-Judgment Motion.</u>

Though it is not clear she has raised it, the Court proceeds to analyze Ms. Moran's potential claim against the officers for an unlawful seizure of her person in violation of the Fourth Amendment.[5]  A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995). Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient to "warrant a man of reasonable caution in the belief that an offense has been or is being committed." *U.S. v. Valenzuela,* 365 F.3d 892, 896 (10th Cir. 2004).

The officers here arrested Ms. Moran at the police station for "obstructing arrest," based on her alleged interference with their arrest of Mr. Rios.  This crime arises under § 30-22-1.  As

---

[5]The Complaint does not allege that the officers' seizure of Ms. Moran was unlawful, and its description of an unlawful seizure appears to refer only to Mr. Rios.  *See* Compl. ¶ 51(a) ("Defendants worked a denial of Plaintiffs' rights . . . secured by the United States Constitution . . . by . . . taking *him* into custody and holding *him* there against his will.") (emphases added). Nevertheless, in the spirit of Federal Rule of Civil Procedure 8(e), the Court liberally construes the plaintiffs' complaint to include Ms. Moran's claim under Section 1983 for unlawful seizure of her person, as the plaintiffs have stated the essential elements of that claim in the Complaint. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

discussed, an element of § 30-22-1 is obstructing officers in the lawful discharge of their duties. However, as previous parts of this opinion establish, there is evidence in the present record to establish that the officers were acting unlawfully when they arrested Mr. Rios, as they had no right to be inside his home.[6]  Accepting that evidence as true, the officers lacked probable cause to believe Ms. Moran committed a crime when she interfered with Mr. Rios's arrest. Accordingly, summary judgment must be denied on Ms. Moran's claim that the arrest violated her Fourth Amendment rights.

Further, that entering a home in the absence of a warrant or an exigency violates the Fourth Amendment was clearly established when the facts of this case arose.  *See, e.g., Payton*, 445 U.S. at 586.  Also clearly established was Ms. Moran's right to reasonably resist an unlawful arrest.  Indeed, New Mexico cases such as *State v. Frazier*, 88 N.M. 103 (1975) set forth that right over thirty years ago, and it has been reaffirmed since.  *See State v. Phillips*, 2008 WL 5712671, *4 (N.M. App. 2008); *see also Santana v. Calderon*, 342 F.3d 18, 30 (1st Cir. 2003) (finding that courts may look to state law to determine whether a right is clearly established for purposes of Section 1983 claims).  In light of the foregoing, Ms. Moran's claim of unlawful seizure should survive summary judgment and thus the officers' motion as to that claim will be DENIED.

---

[6]Although Ms. Moran was not arrested until she proceeded to the police station at the officers' request, nothing in the record presented indicates that she engaged in any conduct justifying arrest while at the stationhouse.

      6.     <u>The Plaintiffs' Claims Arising Under New Mexico Tort Law Remain Intact as the Defendants Have Not Addressed Them in Their Motion for Summary Judgment and the Court Will Thus Not Dismiss Them.</u>

As noted above, the plaintiffs' complaint also alleges several violations of New Mexico tort law by the individual officers.  *See* Compl. ¶¶ 27-48.  The defendants' motions for summary judgment did not refer to these state law claims; nor did the plaintiffs' response.  Whether the plaintiffs complied with procedural requirements is unknown.  *See* N.M.T.C.A. § 41-4-16(A) (requiring any plaintiff seeking damages from New Mexico or any local body under the New Mexico Tort Claims Act to notify the risk management division of the state or the mayor of the municipality within 90 days of the occurrence giving rise to the claim(s)).  Thus, resolving these claims is not appropriate on the current submissions.  The Court therefore finds that the plaintiffs' state tort law claims are unaffected by the summary-judgment motions of the officers and Sunland Park.

### Conclusion

In sum, Sunland Park's motion for summary judgment will be granted as the plaintiffs have not established the necessary elements to prove inadequate training.  Mr. Rios's Section 1983 claims pertaining to the officers' allegedly unlawful entry into his home and seizure of his person will be dismissed as they contradict certain elements of his conviction for obstructing an officer.  Mr. Rios's Section 1983 claim based on excessive force, however, is unaffected by his prior conviction and thus survives summary judgment.

Ms. Moran's Section 1983 claim against the officers for unlawful entry survives summary judgment because she was acquitted of obstructing an officer.  In addition, her claim for unlawful seizure also survives since a reasonable jury could find that  the officers lacked probable cause to

arrest her.  Finally, the Court does not decide the plaintiffs' assault, battery, false arrest and imprisonment, and intentional infliction of emotional distress claims, as they have yet to be addressed by either party.


                                                                  */s/ Bruce D. Black*
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE